UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D<small>R</small>. A<small>MIR</small> K<small>AKI</small>, M.D., <small>AND</small> D<small>R</small>.
M<small>AHIR</small> E<small>LDER</small>, M.D.,

  Plaintiffs,

v.

T<small>ENET</small> H<small>EALTHCARE</small> C<small>ORPORATION</small>,
<small>ET AL</small>.,

  Defendants.

_____/

Case No. 19-10863

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

U.S. M<small>AGISTRATE</small> J<small>UDGE</small>
D<small>AVID</small> R. G<small>RAND</small>

**O<small>PINION AND</small> O<small>RDER</small> G<small>RANTING IN</small> P<small>ART AND</small> D<small>ENYING IN</small> P<small>ART</small> D<small>EFENDANTS</small>'
R<small>ENEWED</small> M<small>OTION TO</small> C<small>OMPEL</small> A<small>RBITRATION AND</small> D<small>ISMISS OR</small> S<small>TAY</small>
L<small>ITIGATION</small> [25] <small>AND</small> D<small>ENYING AS</small> M<small>OOT</small> D<small>EFENDANTS</small>' M<small>OTION TO</small> D<small>ISMISS</small>
<small>AND</small> C<small>OMPEL</small> A<small>RBITRATION</small> [11]**

  Plaintiffs, two cardiologists formerly employed by Defendants, allege that Defendants engaged in retaliation within the meaning of the False Claims Act, 31 U.S.C. § 3730 ("FCA"), when they took adverse employment action against them. They also allege a number of state law causes of action, including violations of the Michigan Medicaid False Claims Act, retaliatory discharge in violation of Michigan public policy, retaliatory removal of clinical privileges in violation of Michigan public policy, false light defamation, violation of the Bullard-Plawecki Employee

Right to Know Act, tortious interference with prospective economic relationships, and intentional infliction of emotional distress.

Defendants have moved to dismiss the case and compel arbitration, arguing that many of these claims are subject to mandatory arbitration provisions in contracts signed by the doctors. The Court will grant this motion in part and compel arbitration on the sole cause of action arising under federal law, Count I, but it will decline to exercise supplemental jurisdiction over the state law causes of action.[1]

**FACTUAL BACKGROUND**

Plaintiff, Dr. Kaki, is a cardiologist specializing nuclear cardiology, internal medicine, and interventional cardiology. He was a clinical associate professor of medicine at Wayne State University School of Medicine and had had staff privileges at the Detroit Medical Center ("DMC") since 2012. (First Am. Compl. ¶ 16). In January 2014, Dr. Kaki was appointed as Director of the Cardiac Catherization Services Unit at the new "DMC Heart Hospital" located at the VHS Harper-Hutzel Hospital ("VHS"). (*Id.* at ¶ 17).

Plaintiff, Dr. Elder, is an interventionalist cardiologist who specializes in cardiology, endovascular cardiology, nuclear cardiology, internal medicine, and

---

[1] Also before the Court is a companion case brought by Dr. Theodore Schreiber, a colleague of Plaintiffs in a similar, but by no means identical, situation. *See Theodore Schreiber, M.D, v. Tenet Healthcare Corporation, et al.*, Case No. 2:19-cv-10965-AJT-SDD. That case has been dismissed without prejudice as well.

interventional cardiology. (*Id.* at ¶ 24). He served as the Director of the Cardiac Care Unit, Ambulatory Services Program, Cardiac CT Angiogram, PERT Program, Carotid Stenting Program, and Endovascular Medicine at the DMC Heart Hospital. (Id at. ¶ 25). He has also held a Clinical Professorship at Wayne State Medical School and Michigan State University. (*Id.* at ¶ 27).

Defendant Tenet Healthcare Corporation ("Tenet"), a for-profit company, bought Defendants DMC and VHS in 2013, and it owned the DMC Heart Hospital from its July 2014 opening. (*Id.* at ¶ 36). The other corporate defendants are VHS of Michigan, Inc., and VHS Sinai-Grace Hospital, Inc. Additionally, there are several individual Defendants. Anthony Tedeschi has been the CEO of DMC since 2017 (*Id.* at ¶ 9). Scott Steiner was the CEO of DMC from 2012 until his retirement on February 8, 2019. (*Id.* at ¶ 10). Eric Evans was the President of Hospital Operation for Tenet from March 2016 to December 2018. (*Id.* at ¶ 11). Conrad Mallett, Jr. was the CEO of Sinai Grace Hospital Since August 14, 2017. (*Id.* at ¶ 12). John Levy is the chair of the Joint Conference Committee at the DMC. (*Id.* at ¶ 13).

The First Amended Complaint provides a narrative wherein the two cardiologists refused to participate in the drastic scale-down of quality and safety that Tenet instituted when it purchased DMC in 2013. By their account, the cardiologists continually spoke out against unsafe, unethical, and illegal medical practices, including the maintenance of unsterile surgical tools (¶¶ 49-55), cuts to

the life-saving State Blood Lab from the Cardiac Catherization Unit (¶ 57), dangerous and unnecessary medical procedures (¶¶ 60-62), fraud with regard to physician coverage in the Cardiac Team One program (¶¶ 63-68), and fraudulent billing under Medicaid and Medicare (¶ 48). To silence Plaintiffs and retaliate against their insubordination, Defendants hired a law firm — Latham & Watkins — to conduct a review of the doctors in order to provide a pretext to dismiss them and terminate their contracts. (*Id.* at ¶ 72). On October 1, 2018, Plaintiffs were terminated. DMC sent an email to 5,000 DMC employees stating that the cardiologists were fired for "violations of our standards of conduct." (*Id.* at ¶ 79).

## PROCEDURAL HISTORY

Plaintiffs filed suit on March 25, 2019. [Dkt. # 1]. On April 17, 2019, Defendants filed a Motion to Dismiss and Compel Arbitration [11]. Plaintiffs filed an Amended Complaint [20] on June 4, 2019, and Defendants filed a Renewed Motion to Compel Arbitration and Dismiss or Stay Litigation [25] on June 18, 2019. The Court held a hearing on the motions on July 22, 2019. Per the Court's instruction, both parties filed supplemental briefs [31, 32] on August 5, 2019.

## LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. § 2, ("FAA"), a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (internal citation omitted). "Despite this strong presumption in favor of arbitration, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008) (quoting *Simon v. Pfizer Inc.,* 398 F.3d 765, 775 (6th Cir.2005)).

## ANALYSIS

Plaintiffs' First Amended Complaint alleges the following counts.

>Count I: Retaliation in violation of 31 U.S.C. § 3730
>Count II: Retaliation in violation of M.C.L. § 400.610c
>Count III: Retaliatory discharge in violation of Michigan public policy
>Count IV: Retaliatory removal of clinical privileges in violation of Michigan public policy
>Count V: False Light publication that termination was due to misconduct
>Count VI: A violation of the Bullard-Plawecki Employee Right to Know Act MCL 423.501 (as to Dr. Kaki only)
>Count VII: Tortious interference with prospective economic relationships
>Count VIII: Intentional Infliction of Emotional Distress

Defendants argue that many, if not all, of Plaintiffs' claims are subject to arbitration provisions that each doctor agreed to in their personal corporations' contracts with Defendant VHS Harper Hutzel Hospital, Inc. On May 1, 2017, Dr. Elder signed a Directorship Agreement with VHS on behalf of Mahir D. Elder, M.D. P.C., his medical group. (Dkt. 11-5 Def. Ex. D). On July 5, 2016, Dr. Kaki signed a

similar Directorship Agreement with VHS on behalf of Amir Kaki, M.D., P.C. (Dkt. 11-4 Def. Ex. C). Both directorship agreements contain detailed provisions on the responsibilities and compensation of the directors, in addition to provisions on when termination of the agreements is permitted. On February 1, 2016, Dr. Elder signed a Cardio Team One On-Call Agreement with VHS on behalf of his medical group. (Dkt. 11-6 Def. Ex. E). On February 25, 2015, Dr. Kaki signed the Cardio Team One On-Call Agreement with VHS on behalf of his medical group. (Dkt. 11-7 Def. Ex. F). All four of these contracts provide as follows:

> Any dispute or controversy arising under, out of, or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof, shall be determined and settled by final and binding arbitration in the county in which the Hospital is located in accordance with the Commercial Rules of Arbitration ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS") before one arbitrator applying the laws of the State.

(Dkt. 11-4 Def. Ex. C; Dkt. 11-5 Def. Ex. D; Dkt. 11-6 Def. Ex. E; Dkt. 11-7 Def. Ex. F).

Defendants argue that most of Plaintiffs claims are subject to this mandatory arbitration agreement and should be dismissed.

When confronted with arbitration provisions that encompass disputes "relating to" the contract, the Sixth Circuit has held that any dispute that "must make reference to" the contract is subject to mandatory arbitration. *Fazio*, 340 F.3d at 396; *see also NCR Corp.*, 512 F.3d at 814 ("the cornerstone of our inquiry rests upon

whether we can resolve the instant case without reference to the agreement containing the arbitration clause."). This is only one stage of the inquiry, however.

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting Stout, 228 F.3d at 714).

The first and third prongs are undisputed. The parties agreed to arbitrate at least matters arising from or relating to the directorship agreements and Cardio Team One on-call agreements. Federal statutory claims can certainly be subject to mandatory arbitration clauses, *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 121 (2000), and Plaintiffs do not argue that Congress intended the FCA to be exempt from arbitration clauses. Instead, Plaintiffs focus their objections to arbitration on the scope of these agreements.

Plaintiffs argue that the directorship agreements need not be referenced to resolve the case because they are irrelevant to their employment relationship with Defendants. The four agreements are independent contractor agreements between the doctors and VHS, and they explicitly disclaim any employment relationship. This does not mean, however, that causes of action arising from Plaintiffs' alleged

employment relationship with Defendants fall outside the scope of the agreements. To the extent that Plaintiffs argue that their duties exceeded those in the Directorship Agreement or that those duties — according to Michigan's economic realities test — represented an employment relationship, they are attacking the validity of the underlying the directorship agreements and the importance of their independent contractor designations. The resolution of such an argument would require referencing the independent contractor agreements. Such a case must therefore, according to the plain language of the four agreements and Sixth Circuit precedent on how to interpret them, be heard by an arbitrator.

Plaintiffs also maintain that the arbitration provisions are unenforceable by and against non-signatories of the agreements. Though Michigan law provides that "a party cannot be required to arbitrate when it is not legally or factually a party to the agreement," it also provides that "[n]onsignatories of arbitration agreements can still be bound by [the] agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego and estoppel." *Thomas v. Right Choice Staffing Group*, LLC, Case No. 15-10055, 2015 WL 4078173 * 6 (E.D. Mich. July 6, 2015) (quoting *St. Clair Prosecutor v. AFSCME*, 235 Mich. 204, 388 (Mich. 1986)).

> [A] non-signatory to an arbitration agreement can compel arbitration: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations of

> substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.

*City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010 WL 1875758, at *6 (Mich. Ct. App. May 11, 2010) (citing *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 528 (5th Cir.2000)); *see also Javitch v. First Union Sec., Inc.* 315 F.3d 619, 628 (6th Cir. 2003) (holding that "a signatory may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract.").

Both conditions for non-signatories compelling arbitration are present here. First, as explained below, Plaintiffs must rely on the directorship agreements to litigate their False Claims Act retaliation claims. Second, the misconduct which VHS, the signatory, is alleged to have committed is the same as, or at least substantially interdependent to, the conduct of its corporate parents and employees. The non-signatory Defendants therefore have the same right to compel arbitration against Plaintiffs as the signatory to the directorship agreements.

The only federal claim, Count I, which alleges retaliation in violation of the False Claims Act, includes the termination of the directorship agreements as part of the retaliation. The retaliation section of the First Amended Complaint specifically lists "removal from Director positions" as an element of Defendants' retaliation. (Compl. ¶ 85). Count I further asks for reinstatement to previous positions as a remedy for the doctors (¶ 108), which would entail reinstatement to the positions outlined in the directorship agreements. Adjudicating this count would therefore require analyzing facts arising under the directorship agreements, and the parties

explicitly agreed that this is a task for an arbitrator. *See Fazio, 340 F.3d at 396 and NCR Corp.*, 512 F.3d at 814 (both holding, as explained above, that contracts that require arbitration for conduct "relating to" their content require arbitration of disputes whose resolution would necessitate referencing the contracts). Count I will therefore be dismissed without prejudice, so that it can be sent to arbitration.

The remaining counts all arise from Michigan law. The Court's only basis for jurisdiction over them is supplemental jurisdiction. "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction") (emphasis added)). District courts consider the following factors when determining whether to exercise such jurisdiction.

> Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*See Carnegie-Mellon University v. Cohill*, 484 U.S. 34, 354-356 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).

The factors in this case clearly militate in favor of dismissal. Discovery has not commenced, and the case is still in its earliest stages. One Plaintiff, Dr. Kaki, already began litigating Count VI in state court, even reaching the Michigan Court of Appeals. (*See* Dkt. 30-1). Perhaps most importantly, principles of comity suggest that Michigan courts should adjudicate cases arising entirely from Michigan statutory and common law. The Court will dismiss Counts II-VIII without prejudice so that state courts can determine the arbitrability of the state law causes of action.

## Conclusion

Plaintiffs are skilled professionals with years of experience in hospital administration and access to counsel. They will be bound by the arbitration provisions in the contracts they signed to assume their roles as directors and Cardio Team One on-call cardiologists. These four contracts mandate arbitration for allegations that Defendants retaliated against them by terminating their leadership positions.

Accordingly,

**IT IS ORDERED** that Defendants' Renewed Motion to Compel Arbitration and Dismiss or Stay Litigation [25] is **GRANTED IN PART AND DENIED IN PART**. Count I is dismissed without prejudice, to be arbitrated pursuant to the contract terms. Counts II-VIII are also dismissed without prejudice, to be either arbitrated or litigated in state court.

**IT IS FURTHER ORDERED** that Defendants' original Motion to Dismiss and Compel Arbitration [11] is **DENIED AS MOOT**.

**SO ORDERED**.

Dated: October 9, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge